# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SALLY BOARMAN | * | |
| | * | |
| v. | * | Civil Case No. ELH-17-1175 |
| | * | |
| NANCY A. BERRYHILL, | * | |
| ACTING COMMISSIONER, SOCIAL | * | |
| SECURITY ADMINISTRATION | * | |
| | * | |

********

## MEMORANDUM OPINION

In this employment discrimination case, self-represented plaintiff Sally Boarman, an employee of the Social Security Administration ("SSA"), filed suit against defendant Nancy A. Berryhill, the Acting Commissioner of SSA. ECF 1.[1] Plaintiff alleges that SSA retaliated against her for filing a complaint in 1980 with the Equal Employment Opportunity Commission ("EEOC"), by way of excluding her from subsequent projects, training, and promotions. *Id.* at 2.

Defendant has filed a prediscovery motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 10. It is supported by a memorandum (ECF 10-1) (collectively, the "Motion") and multiple exhibits.[2] The SSA argues, *inter alia*, that most of plaintiff's claims are barred by res judicata, and that summary judgment is appropriate as to the one remaining claim, which concerns the failure of SSA to select plaintiff for the position of a Social Insurance Specialist. *Id.* Plaintiff opposes the Motion (ECF 14; ECF

---

[1] Plaintiff was represented by counsel during SSA's investigation of plaintiff's allegations. *See* ECF 10-4 (Report of Investigation), at 1; ECF 10-5 (Final Agency Decision), at 1.

[2] ECF 10-4, the SSA's Report of Investigation, dated April 1, 2015, is over 250 pages in length. The investigation was conducted between February 6, 2015, and March 30, 2015. *Id.* at 3.

15) (collectively, "Opposition"), and she submitted several exhibits. Defendant replied. ECF 16. ("Reply"). Plaintiff then filed a "Motion for Leave to File Additional Exhibit" (ECF 17), which was granted. *See* ECF 19 (Order); ECF 20 (exhibit).

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall construe the Motion as one for summary judgment and grant it.

## I. Factual and Procedural Background[3]

Since 1975, plaintiff has worked at SSA, in the office now known as the Office of Quality Review. ECF 10-4 at 3. She alleges that, over thirty years ago, she filed a charge with the EEOC regarding harassment in the workplace. ECF 1 at 2. The EEOC determined that plaintiff's supervisor had engaged in harassing conduct, but also found that plaintiff had not been the subject of discrimination and did not award her any relief. *Id.*

During plaintiff's long tenure at the SSA, she was not selected for various promotions. *Id.* However, in July 2015, plaintiff received a promotion to GS-13, after many years as a GS-12. ECF 14 at 3.

In the interim, on April 23, 2014, plaintiff applied for the position of Social Security Specialist (the "Position"), a GS-13 position. ECF 10-4 at 1, 5. The selection official was Gary Greene, the Division Director, who screened the candidates with Victoria Wolf, the Program Manager. ECF 10-4 at 7. Out of more than 100 applicants, Greene and Wolf eventually selected five finalists from their own staff, including plaintiff, along with four "external" finalists who were also SSA employees. *Id.*

---

[3] The Factual Background is derived from the exhibits submitted by the parties and from the Complaint. Because plaintiff is *pro se*, I must construe her submissions liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, (2007); *see also Macena v. U.S. Citizenship & Immigration Servs.*, TDC-14-3464, 2015 WL 6738923, at *1 (D. Md. Nov. 2, 2015).

Greene and Wolf did not interview the candidates from their own staff. However, for the external finalists, they telephoned references and conducted several interviews. *Id.* Greene stated that they assessed a variety of criteria, and that if candidates "had direct experience in one of [SSA's] field offices, that was also a point in their favor." *Id.*; *see also* ECF 10-4 at 115-119 (Greene Affidavit). Wolf corroborated that assertion. ECF 10-4 at 9; *see also* ECF 10-4 at 121-125 (Wolf Affidavit).

Greene and Wolf ranked plaintiff fourth of the nine finalists. *Id.* They believed plaintiff to have good potential to perform well, and gave her a "bonus point because she worked for them and knew the lay of the land." ECF 10-4 at 8. However, she lacked field experience, which is "a definite plus." *Id.* Wolf stated: "Being able to hire someone from a field site is ideal." *Id.* at 9.

Ultimately, Greene and Wolf offered the Position to one of the external candidates, Cyndi Ikenaga, an employee of the Los Angeles satellite branch of the San Francisco field site. ECF 10-4 at 7. Ikenaga had good references, "the ability to do the job . . . on day one," and she was a "subject expert/program expert" who also had managerial experience. *Id.* at 8.

Greene emailed plaintiff on August 28, 2014, to inform her that she had not been selected for the Position. ECF 10-4 at 51. Plaintiff contacted the EEOC office on September 15, 2014, to initiate a pre-complaint. ECF 10-4 at 23. She alleged that she had been discriminated against based on her race (white), age (70), and sex (female), and had been retaliated against for her prior EEOC activity. *Id.* After mediation failed, plaintiff filed a formal EEOC charge on December 31, 2014. ECF 10-4 at 13-14. SSA issued a Final Agency Decision on January 27, 2017, finding that SSA did not discriminate against plaintiff based on race, sex, or age and did not retaliate for her prior complaints. ECF 10-5.

On December 29, 2014, about a month before the Final Agency Decision was issued, plaintiff filed a lawsuit in this Court, alleging that she had been subjected to retaliation for over thirty years as a result of her EEOC complaint in 1980. *See Boarman v. Colvin,* GLR-14-4028 ("Lawsuit I"), ECF 1.[4] On October 28, 2015, United States District Judge George L. Russell, III granted SSA's motion to dismiss Lawsuit I, with prejudice, stating: "Because Boarman alleges the EEOC ruled on her charge over thirty years ago, Boarman did not file the instant retaliation claim within the ninety-day limitations period." Lawsuit I, ECF 14 at 2. Plaintiff filed a motion for reconsideration (*id.*, ECF 16), but that motion was denied. *Id.*, ECF 17. It does not appear that plaintiff appealed the dismissal of Lawsuit I.[5]

Much of the evidence plaintiff submits to this Court confirms her contention that she was a good, well-respected employee whose ideas have been valuable to her office over the course of her long career. ECF 14-3; ECF 14-5; ECF 17. SSA does not dispute this view, and seems to agree that plaintiff was a very good candidate for the Position, although she was not ultimately selected. ECF 10-4 at 8.

It is from this procedural posture that plaintiff filed the pending action in this Court on April 28, 2017. *See* ECF 1. In the instant action, both in her Complaint and in her Opposition to the Motion, plaintiff focuses exclusively on her retaliation claim. ECF 1, ECF 14. Even

---

[4] Among other things, a court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990). The court may also take judicial notice of matters of public record. *See*, *e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

[5] To the extent plaintiff seeks reconsideration of Judge Russell's 2015 ruling under Federal Rules of Civil Procedure 59(e) or 60(b), based on new evidence or any other grounds, she would have to file an appropriate motion in that case for Judge Russell's consideration. His ruling cannot be challenged in this separately filed case.

construing her Complaint liberally, it is clear that plaintiff has not asserted claims of race, age, or sex discrimination in this Court.

Defendant has moved to dismiss or, in the alternative, for summary judgment on two grounds: (1) most of plaintiff's claims are barred by res judicata because they were decided by Judge Russell in Lawsuit I; and (2) plaintiff's claim regarding her non-selection for the position of Social Security Insurance Specialist in 2014 lacks merit.  ECF 10-1.  I agree with both contentions.

## II.    Legal Standards

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. ECF 10. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Generally, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court has discretion to consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller et al., Federal Practice & Procedure § 1366 (3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin,* 656 Fed. Appx. 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLP*, 616 Fed. Appx. 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). If a nonmoving party believes that further discovery is

necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at her peril, because "'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 Fed. Appx. at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). According to the Fourth Circuit, the failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

This case has a long history, both administratively and in federal court. Notably, plaintiff has not filed an affidavit under Rule 56(d) opposing prediscovery summary judgment, nor has she suggested that she would be prejudiced in the absence of discovery. Moreover, plaintiff does not dispute the authenticity of the exhibits attached to defendant's motion. Indeed, plaintiff attached seven of her own exhibits to her Opposition (ECF 14-1 to ECF 14-7), filed an additional exhibit by way of motion (ECF 17), and filed an errata sheet to replace one exhibit with a new

version. ECF 15.[6]  Therefore, I am satisfied that it is appropriate to address plaintiff's claims in the context of summary judgment, as it will facilitate resolution of this case.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199,

---

[6] In fact, while it is not entirely clear, plaintiff's Opposition may include her own "request for summary judgment," although her filing was not captioned or docketed as such. She said, ECF 14 at 6: "Plaintiff Declares a Legitimate, Retaliation Discriminatory Reason for her Non-Selection, and Requests Summary Judgment in Favor of Plaintiff." To the extent plaintiff intended to move for summary judgment, that motion would be denied for the reasons discussed herein.

2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), cert. denied, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. As indicated, the court must view all of the facts, including any reasonable inferences to be drawn, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including

matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a genuine dispute of material fact. *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

## III.    Discussion

### A.  Res Judicata

Defendant contends that all of plaintiff's claims that were or could have been brought in Lawsuit I are barred by res judicata. Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citation omitted). The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Id.* at 153-54. Notably, in entertaining the Motion on the ground of res judicata, I may take judicial notice of facts from a prior judicial proceeding when, as here, there are no disputed issues of fact. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

Res judicata applies when the following three elements are present: "'(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.'" *Young-Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).  Res judicata prevents a plaintiff from asserting any claims that were or could have been advanced in the earlier case.  *See Allen v. McCurry,* 449 U.S. 90, 94 (1980).

Defendant contends that res judicata bars plaintiff's claims because this Court has already issued a final decision on the merits on her claims regarding alleged retaliatory conduct in Lawsuit I.  ECF 10-1 at 10-13.  Although the parties are in agreement as to the underlying facts, plaintiff asserts that Lawsuit I was not decided on the merits because Judge Russell did not have the benefit of the witness statement she now proffers, and because he dismissed the case on the procedural grounds of untimeliness before reaching the substance of her claims.  ECF 14 at 5-6.

Defendant is correct that all three elements required for claim preclusion have been met.  First, plaintiff's 2014 claim was decided by a final judgment on the merits.  *See* 14-4028-GLR, ECF 14.   To be sure, Judge Russell did not resolve the substantive claim in Lawsuit I, which generally alleged retaliation over the course of thirty years. However, under Rule 41(b) of the Federal Rules of Civil Procedure, unless ordered otherwise, an involuntary dismissal based on any ground other than "lack of jurisdiction, improper venue, or failure to join a [necessary or indispensable] party under Rule 19" ordinarily "operates as an adjudication on the merits." Fed. R. Civ. P. 41.

Courts have ruled that dismissal for untimeliness constitutes a final judgment on the merits for the purposes of res judicata.[7] *See Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826 (8th Cir. 1989); *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir. 1983) (en banc); *Robertson v. Cree, Inc.*, 2012 WL 699533, at *1 (E.D.N.C. Mar. 1, 2012) (dismissing case based on res judicata where the plaintiff asserted claims pursuant to 42 U.S.C. § 1981 after the court had dismissed similar Title VII claims as untimely).

In *Mills,* a case quite similar to the instant case, plaintiff sued her former employer alleging termination on the basis of race. 872 F.2d at 824. The district court dismissed her suit as untimely, because plaintiff filed her complaint more than ninety days after receiving a right-to-sue letter from the EEOC. *Id.* at 825. After judgment was entered in favor of the defendant in the first suit, plaintiff filed another complaint under 42 U.S.C. § 1981, contesting the same termination. *Id.* The district court dismissed the second suit, citing res judicata. *Id.* The Eighth Circuit affirmed the dismissal, stating that "a disposition of a Title VII action as untimely filed is a decision on the merits for purposes of res judicata." *Id.* at 826.

Similarly, in *Nilsen*, 701 F.2d 556, summary judgment was granted for defendant on the plaintiff's Title VII claims due to plaintiff's "failure to meet the timely filing requirements of Title VII." *Id.* at 558. The plaintiff filed a new action alleging similar theories under 42 U.S.C. § 1983, and the court again granted the defendant's motion for summary judgment. *Id.* at 560. The Fifth Circuit affirmed, holding that res judicata precluded the plaintiff's new claims because the prior grant of summary judgment on the basis of timeliness constituted a final judgment on the merits. *Id.* at 562. The Fifth Circuit explained that jurisdictional decisions are not decisions on the merits, but decisions based on limitations are not considered jurisdictional. *Id.* ("the

---

[7] To my knowledge, the Fourth Circuit has not decided this issue.

timely filing requirements of Title VII are to be treated as limitations periods for all purposes."). Therefore, the court determined that a ruling that a plaintiff's claim is untimely bars not only that claim, but any other claims arising from the same cause of action. *Id.* at 562-63.

In this case, Judge Russell granted summary judgment in favor of defendant in Lawsuit I because plaintiff's complaint alleged that her EEOC charge had been filed "over 30 years ago," thus indicating that plaintiff had not filed Lawsuit I within ninety days of the EEOC's disposition of her charge. 14-4028-GLR, ECF 14 at 2. As in *Mills* and *Nilsen*, then, Judge Russell's Order in Lawsuit I is a final judgment on the merits, because the complaint was dismissed on limitations grounds. *See Mills*, 872 F.2d at 826; *Nilsen*, 701 F.2d at 562. Because Judge Russell's decision was premised on plaintiff's failure to timely file her complaint, it constitutes a final judgment on the merits. Thus, the first element is satisfied.

Second, a cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'") (Citation omitted). Notably, "[u]nder this transactional approach, res judicata will bar a 'newly articulated claim[ ]' if it is based on the same underlying transaction and could have been brought in the earlier action." *Clodfelter*, 720 F.3d at 210 (*citing Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008)).

The claims presented here arise out of the same thirty-year period in which plaintiff alleges she was denied opportunities for projects, training, and promotions, and therefore

"involve [] right[s] arising out of the same transaction or series of connected transactions," as alleged in Lawsuit I. *See Harnett*, 800 F.2d at 1314. In addition, as in the complaint filed in Lawsuit I, plaintiff's instant Complaint does not identify the date of any EEOC filing, other than her original filing "over 30 years ago." ECF 1 at 2; 14-4028-GLR, ECF 1 at 2. Moreover, the instant Complaint does not specifically identify any alleged retaliation involving projects, trainings, or promotions that occurred since the filing of Lawsuit I. ECF 1 at 2. Thus, the second element is met as to any transactions that were or could have been raised in Lawsuit I.

Finally, the defendant in this case is in privity with the defendant in Lawsuit I. Parties are in privity for purposes of res judicata where they are "so identified in interest . . . that [they] represent[] precisely the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (quoting *Jones v. SEC,* 115 F.3d 1173, 1180 (4th Cir. 1997)). Here, defendant is merely the official at the head of the SSA at the time this suit was filed, and therefore shares the interests of the prior holder of that office who was sued in Lawsuit I. *See id.* Consequently, the privity requirement is met, and all of the claims plaintiff raised or could have raised in her earlier lawsuit are barred by res judicata.

### B. 2014 Non-Selection

There is one transaction that could not have been part of plaintiff's Lawsuit I. Defendant concedes that plaintiff pursued, and has now properly exhausted, an EEOC complaint regarding her non-selection in 2014 to the position of Social Security Insurance Specialist, advertised under Vacancy Announcement Number SH-1094820. ECF 10-1 at 3. At the time that plaintiff filed Lawsuit I, plaintiff had not yet exhausted her administrative remedies relating to the Position. Plaintiff does not mention the Position expressly in her Complaint, but complaints filed by *pro se* litigants are subject to liberal construction. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982)

(per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, it is appropriate to consider plaintiff's claim regarding the Position in this case, as it is not barred by res judicata.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., "prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination." *Green v. Brennan*, ──U.S. ──, 136 S. Ct. 1769, 1773-74 (2016); *see Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 (4th Cir. 2016); *Boyer-Liberto v. Fontainbleu Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). In order to prevail under Title VII, "the existence of some adverse employment action is required." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In this case, the failure to promote plaintiff to the Position constitutes an adverse employment action. *See Bryant v. Aiken Regional Med. Ctrs. Inc.,* 333 F.3d 536, 544 (4th Cir. 2003) (stating that "[i]t has long been clear that failure to promote an employee constitutes an adverse employment action for the purposes" of Title VII).

In general, there are "two avenues" *at trial* by which a plaintiff may prove intentional employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (recognized in *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) as abrogated on other grounds by *Univ. of Texas Sw. Med. Ctr. v. Nassar*,

570 U.S. 338 (2013)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Young v. United Parcel Serv.*, Inc., ——U.S. ——, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Investments*, LLC, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the three steps of the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In a failure to promote case, the Fourth Circuit has said that, to establish a prima facie case of discrimination under Title VII, the plaintiff must show by a preponderance of the evidence that (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 959-60 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093-94; *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994); *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir. 1991)).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, ⸺ Fed.Appx. ⸺, 2017 WL 908208, at *3 (4th Cir. Mar. 7, 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove 'both

that the reason was false, and that discrimination was the real reason.' ") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination at trial. *See Burns*, 96 F.3d at 731. At the summary judgment or motion to dismiss stage, however, these approaches merely serve to inform a court's evaluation of the allegations. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 592 Fed. Appx. 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*....").

In the Motion, defendant argues that summary judgment is appropriate because plaintiff has not put forth any direct or circumstantial evidence of retaliation, nor has she established retaliation under the *McDonnell Douglas* framework. ECF 10-1 at 18-21; *see McDonnell Douglas*, 411 U.S. at 802. I agree.

"Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted). Circumstantial evidence, defined as "[e]vidence based on inference and not on personal knowledge or observation" (Blacks L. Dictionary, "Evidence" (10th Ed. 2014)), "is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)). For example, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional

discrimination, and it can be quite persuasive." *Reeves v. Sanderson Plumbing Prod.*, Inc., 530 U.S. 133, 147 (2000).

To be sure, in this case plaintiff has alleged that defendant acted with retaliatory intent. *See, e.g.*, ECF 1 at 2. However, the only direct or circumstantial evidence she proffers is the document dated December 3, 2014, purportedly drafted by an anonymous "employee of the Federal Government," recounting information he or she received in 2005 in a conversation with unidentified individuals. ECF 14-1. That document does not meet the requirements to be considered in opposition to a motion for summary judgment. *See* Fed. R. Civ. Proc. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also J.H. by David H. v. ABC Care, Inc.,* 953 F. Supp. 675, 682 (D. Md. 1996) (deeming evidence "not of sufficient caliber and quantity to present a dispute of material fact" where affidavits did not identify "the persons who purportedly made the statements relied upon"). Even if the document from the anonymous employee could be considered at summary judgment, information provided about the alleged motivations of selecting officials in 2005 has no bearing on decisions made nine years later, in 2014, regarding plaintiff's non-selection for the Position.

Defendant also argues that summary judgment is appropriate under the *McDonnell Douglas* standard because plaintiff failed to set forth a prima facie case of retaliatory non-selection. ECF 10-1 at 18-21. As indicated, to establish a prima facie case that a failure to promote violated Title VII, the plaintiff must prove: "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving

rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959-60. Clearly, plaintiff has satisfied the first three criteria.

Although it is a closer call as to whether plaintiff has demonstrated that she was rejected for the Position under "circumstances giving rise to an inference of unlawful discrimination," "the burden of establishing a prima facie case of disparate treatment is not onerous." *Evans,* 80 F.3d at 960 (citing *Burdine*, 450 U.S. at 253). Thus, for the purpose of this opinion, I find that plaintiff has satisfied the "relatively easy test." *Id.* (citing *Young v. Lehman,* 748 F.2d 194, 197 (4th Cir. 1985)).

Even assuming, then, that plaintiff can establish a prima facie case, she offers no evidence that defendant's legitimate, non-discriminatory reason for her non-selection was pretexual. "[T]he employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria." *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992). Accordingly, "[i]n a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans,* 80 F.3d at 960. Plaintiff has not done so here. Defendant cites statements from Greene and Wolf regarding the fact that experience in a field office was an important factor in their evaluation of the candidates. *See* ECF 10-4 at 116, 122. Ikenaga had such experience, and plaintiff did not. *Id.*

Moreover, no inference can be drawn that there was a causal connection between plaintiff's protected EEOC activity and her non-selection. The Fourth Circuit has found that, without other evidence of retaliation, a six month lapse in time between the protected activity and the alleged discrimination does not demonstrate "temporal proximity" suggesting a causal connection. *See Hooven-Lewis v. Caldera*, 249 F.3d 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.

1998) (determining that a thirteen month interval between plaintiff's initial charge and termination was too long to establish causation absent other evidence of retaliation). Here, the lag of more than 30 years from the only EEOC complaint mentioned in the complaint is clearly outside the bounds of "temporal proximity."[8]

Finally, plaintiff received a promotion shortly after her non-selection for the Position, undermining the notion that she was passed over on the basis of retaliation. ECF 14 at 3. Plaintiff, in fact, credits Wolf, who participated in the screening for the Position, for "refusing to retaliate" and for promoting plaintiff to GS-13. ECF 14 at 14.

In the absence of any evidence suggesting that defendant's legitimate, non-discriminatory reason for selecting another candidate constituted pretext for retaliatory conduct, and the substantial evidence to the contrary, summary judgment is appropriate.

## IV.  Conclusion

For the reasons set forth above, I shall grant summary judgment to defendant. An Order follows, consistent with this Memorandum Opinion.

Dated:  April 2, 2018 _____/s/_____
Ellen L. Hollander
United States District Judge

---

[8] Defendant avers that plaintiff filed a more recent EEOC charge in 2009, ECF 10-6 at 2-3, but even that charge was five years before the non-selection in question.